# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

REX and BARBARA DONAHUE,

              Plaintiffs,

v.

                                              CIVIL ACTION NO.   3:20-0875

FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECIVER FOR THE FIRST STATE BANK,

              Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Dismissal of All Claims by the Federal Deposit Insurance Corporation as Receiver (FDIC-Receiver) for The First State Bank. ECF No. 5. Plaintiffs Rex and Barbara Donahue oppose the motion. For the following reasons, the motion is **GRANTED.**

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

This action is the first of four actions filed by Plaintiffs in this Court to collect damages following the insolvency of The First State Bank.[1] It is undisputed that the Donahues and their closely-held corporate entities, Hurricane Plaza, Inc. and Sugarcreek, Inc., had a long-standing business and lending relationship with the now defunct bank. On April 3, 2020, the FDIC was appointed as receiver for the bank, and it succeeded to the bank's interests and liabilities. *See* 12 U.S.C. § 1821(d)(2)(A), in part ("The [FDIC] shall, as conservator or receiver,

---

[1] *See Donahue v. FDIC*, Nos. 3:21-00042, 3:21-00043, and 3:21-00095.

and by operation of law, succeed to--(i) all rights, titles, powers, and privileges of the insured depository institution"). Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), any claimants of a failed institution are required to file claims "before a certain date—the 'bar date.'" *Willner v. Dimon*, 849 F.3d 93, 102 (4th Cir. 2017) (quoting *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 919 (4th Cir. 1996); footnote omitted). The bar date for submitting claims against The First State Bank was July 22, 2020. *See* https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/fsb-wv.html.

As relevant to this case, Plaintiffs timely filed *pro se* claims with the FDIC-Receiver in the amount of $56,810.51 (Claim No. NS1053600226) and $53,000.00 (Claim No. NS1053600195), respectively referred to as the "Sugarcreek Payment Claim" and the "Real Estate Claim." On November 2 and 9, 2020, the FDIC-Receiver disallowed the claims "as not proven to the satisfaction of the Receiver." *Notice of Disallowance of Claim*, Claim No. NS1053600226 (Nov. 9, 2020), Ex. 1 to the *Compl.*, ECF No. 1-1; *Notice of Disallowance of Claim*, Claim No. NS1053600195 (Nov. 2, 2020), Ex. 5 to the *Compl.*, ECF No. 1-5. After the Notices were issued, the Donahues retained counsel, who timely filed this action on their behalf for de novo review. *See* 12 U.S.C. § 1821(d)(6) (providing claimants have 60 days to file a lawsuit or the disallowance of the claim becomes final). Sugarcreek, Inc. was not named as a plaintiff. The FDIC-Receiver then moved to dismiss this action pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support of the motion, the FDIC-Receiver generally argues the Donahues lack standing and their claims are vague, factually unsupported, and barred by the statute of limitations. The FDIC-Receiver also asserted the Complaint seeks remedies that are not available in an action against it.

In response, the Donahues stated they received untimely notice of the disallowance. As a result, their current counsel was unable to gather all the relevant documents and perform the necessary research before filing the hastily drafted Complaint. To the extent the Court found the Complaint lacking, the Donahues' counsel specifically requested within the Complaint itself that he be permitted to amend.

Upon consideration, the Court entered a Memorandum Opinion and Order on April 29, 2021, recognizing that the Donahues "owned, operated, and solely controlled Sugarcreek, Inc. and Hurricane Plaza, Inc. as a closely-held companies." *Donahue v. FDIC for First State Bank*, 3:20-0875, 2021 WL 1702933, at *2 (S.D. W. Va. Apr. 29, 2021). It appeared to the Court that the Donahues "had both a personal and a business relationship with The First State Bank, and they were accustomed to personally conducting business with the bank on behalf of their companies for many years." *Id*. The Court also found that, despite the inartful *pro se* administrative claim, "the FDIC-Receiver easily identified the companies involved based upon the information Plaintiffs provided." *Id*. However, the Court found the factual basis for the Donahues' claims in the Complaint were scant and the claims themselves were difficult to discern. Additionally, as previously mentioned, Sugarcreek, Inc. was not named as a plaintiff when the action was filed with this Court.

In light of the circumstances, the Court granted counsel's request to file an Amended Complaint and held the Motion to Dismiss in abeyance. However, given the FDIC-Receiver's arguments in its motion, the Court instructed the Donahues that they "must specifically identify the contracts underlying their claims so the appropriate statute of limitations

can be determined." *Id*. The Court further stated they "should add as parties any corporate entities they believe are necessary parties." *Id.*

Despite being given the opportunity to amend, the Donahues choose not to amend. Therefore, the Court must evaluate the FDIC-Receiver's Motion to Dismiss in light of the original Complaint.

## II.
## STANDARD OF REVIEW

Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, C.J., concurring). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*. On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citations omitted). A dismissal only should be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

With regard to a motion under 12(b)(6), courts look for "plausibility" in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)).

The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Additionally, when ruling on a motion to dismiss, this Court may consider documents attached to the complaint and a motion to dismiss, without converting the motion to one for summary judgment, provided the documents "are integral to the complaint and authentic." *Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145 (4th Cir. 2018) (stating "[w]hile considering a 12(b)(6) motion, we may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic" (internal quotation marks and citations omitted)). It is under these principles that the Court must consider the FDIC-Receiver's motion.

### III.
### DISCUSSION

With respect to their first claim for $56,810.51, Plaintiffs allege that Sugarcreek, Inc. made three "misapplied" payments to The First State Bank between November 4, 2011 and November 2, 2012. *Compl.* ¶6; Ex. 3 to the *Compl.*, ECF No. 1-3, at 4-6. Plaintiffs assert "[t]hese misapplied loan funds relate to Mr. Jackie Cantley," who served as a Vice President of the bank

and who pled guilty before this Court in 2014 to Misallocation of Bank Funds, in violation of 18 U.S.C. § 656. *Id.*[2] In support of their claim, Plaintiffs attached to their Complaint a copy of the letter they sent to the FDIC-Receiver on June 18, 2020. *Ltr. from Forrest Rex Donahue to FDIC-Receiver* (June 18, 2020), ECF No. 1-2. In the letter, Mr. Donahue asks the FDIC-Receiver to

> please look into the accounting of [a $50,000] line of credit. Mr. Jackie Cantley Vice-President for FSB handled this for us. It is apparent after looking over all the documentation that Mr. Cantley added monies to this account from SUGARCREEK INC., on 5/25/2012 in the amount of $36,715.45 *again on 11/02/2012 in the amount of $8,816.21.[3]

*Id.*[4] Plaintiffs also attached the three checks at issue paid from Sugar Creek, Inc.'s account, and a copy of an "Account History for Commercial Line of Credit – XXXXX0371" showing a credit in those amounts.[5] Despite the vagueness of the letter, the FDIC-Receiver treated the letter as a claim and denied the same.

Plaintiffs then filed their Complaint in this Court seeking review of the FDIC-Receiver's denial of their claim. Upon review, the Court finds the claim in the Complaint is equally ambiguous. The Complaint merely incorporates by reference the letter and seeks

---

[2] Mr. Cantley was sentenced on September 15, 2014, to sixty months of incarceration. *See United States v. Cantley*, 3:13-cr-00245 (S.D. W. Va. 2013).

[3] The amount of $36,715.45 appears to be in error as the amount of the check was for $35,715.45. The other two checks were for $8,816.21 and $12,181.33.

[4] Mr. Donahue also complains about difficulty he had getting a release and copy of a vehicle title, but he states he was able to get a duplicate title after three days. He believes Mr. Cantley used the titles for two of their other cars to fund projects they did not authorized. *Id.*

[5] The FDIC-Receiver states this account was Plaintiffs' line of credit, making Plaintiffs the beneficiaries of the payments.

reimbursement for the three checks that Sugarcreek, Inc. made to the loan ending in 0371, blaming Mr. Cantley for the amounts being misapplied. However, Plaintiffs have failed to identify any legal theory, statute, or contract which would entitle them to recover these three loan payments.[6] In fact, the Account History attached to the Complaint actually shows a credit to the account for the checks that were drawn from Sugarcreek, Inc.'s accounts. Although the Court assumes the truth of the factual allegations for purposes of a motion to dismiss, it does not do so as to legal conclusions and, quite frankly, it is impossible to decipher what Plaintiffs' claim was at the administrative level or what it is in their Complaint. Moreover, without doubt, Mr. Cantley's criminal activity was a contributing factor in the bank's insolvency, but neither the indictment nor his conviction involved the loans at issue here. The Court finds the only thing that is clear about this claim is that it fails the plausibility standard and is woefully insufficient to show any entitlement to relief.

Additionally, while the parties agree that Sugarcreek, Inc. is a corporation owned by Plaintiffs, Plaintiffs have not identified any legal or factual basis showing they have standing to personally recover any payments Sugarcreek, Inc. made. Standing is a constitutional requirement to guarantee federal courts do not go beyond their authority. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (citation omitted). The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citations

---

[6] Plaintiffs make a very cursory statement that their "method of recovery is through a claim for breach of loan First State Bank, breach of contract against First State Bank, failing to credit loan payments, and other general misconduct by the First State Bank . . . .", but they do not identify any contract breached or otherwise explain these "method[s] of recovery." *Compl*. ¶9, in part.

omitted). Additionally, where a plaintiff is "the party invoking federal jurisdiction," it is the plaintiff who "bears the burden of establishing these elements." *Id*. (citation omitted). "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (footnote omitted)). Without standing, this Court lacks jurisdiction, and the case must be dismissed. *California v. Texas*, 141 S. Ct. 2104, 2120 (2021) (directing case be dismissed where the plaintiffs failed to show they had standing).

For a plaintiff to establish an injury in fact, the plaintiff must present evidence "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted in *Spokeo*)). A "particularized" injury "must affect the plaintiff in a personal and individual way." *Id*. (citation and internal quotation marks omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id*. (citation omitted).

It is well established that West Virginia law presumes a corporation is a separate legal entity apart from its shareholders. Syl. Pt. 3, in part, *Southern Electrical Supply Co. v. Raleigh County National Bank,* 320 S.E.2d 515 (W. Va. 1984) ("The law presumes . . . that corporations are separate from their shareholders."). Having elected to operate their business through a corporation, it is Sugarcreek, Inc., and not Plaintiffs, that has standing to bring an action for damages it may have suffered. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 347–48 (4th Cir. 2013) (holding that the plaintiffs' election to do business as a limited liability company (LLC) to protect their personal assets made them agents of the company, and "they gave up

standing to claim damages to the LLC, even if they also suffered personal damages as a consequence" (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) (stating "it is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts")). Thus, the Donahues lack standing to pursue a claim a behalf of Sugarcreek, Inc.[7]

As to the Real Estate Claim, Plaintiffs allege in the Complaint that they made a claim for $53,000.00 to the FDIC-Receiver, but they have been unable to locate any of the original claim documents. Therefore, instead of alleging any facts to support their claim, Plaintiffs stated in the Complaint that they "intend this document to serve as a 'lawsuit' within the meaning of [the] US Code and the letter from the FDIC disallowing all claims against Plaintiffs." *Compl.* ¶14, in part. Clearly, the fact that Plaintiffs have included absolutely no facts to support or explain their claim makes it patently insufficient. A plaintiff cannot simply file a complaint alleging they have a claim and then, in essence, say I will tell the defendant and the Court later what the basis for my claim is. Although Rule 8 does not require "detailed factual allegations," there must be enough facts to support a plausible claim. What Plaintiffs did here is a quintessential example of alleging a mere "unadorned, the-defendant-unlawfully-harmed-me accusation," with nothing more. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). Thus, the Court finds this claim cannot survive.

---

[7]According to the FDIC-Receiver, Sugarcreek, Inc. filed for Chapter 11 bankruptcy on June 30, 2014. *In re Sugarcreek, Inc.*, No. 14-30257, (Bankr. S.D. W. Va. 2014). A trustee was appointed, and the bankruptcy was converted to chapter 7 on June 8, 2017.

Moreover, even if the Court considers the documents that were submitted to the FDIC-Receiver for administrative review,[8] the Court finds the claim cannot survive. The first document is a notarized "Proof of Claim" signed by Carla Ore, a real estate agent, who listed a piece of property at 105 Iroquois Trail in Ona, West Virginia. Ms. Ore stated, in part, that she had a buyer for the property under contract for $180,000, but The First State Bank refused to sell the property to her client. Ms. Ore said a bank official told her that the bank intended to auction the property off for $150,000. As a result, Ms. Ore claims a loss of a 6% commission. The second document is the Contract to Purchase referenced by Ms. Ore. The third document is a statement from the bank showing that Hurricane Plaza, Inc. owed $136,867.78 as a payoff amount on the property. The fourth set of documents includes releases and tax liens on the property against Forrest Donahue, as an Individual Officer of Hurricane Plaza, Inc., in the amount of $126,839.70. The fifth document is an email exchange between two attorneys regarding the property. Given that the proof of claim was signed by Ms. Ore, the property appeared to be owned by Hurricane Plaza, Inc., and Plaintiffs gave no explanation in their Complaint why they should personally be awarded $53,000, the Court finds these documents are of no help to Plaintiffs.

In their Response, Plaintiffs argue their claim is for the loss of the sale of the property due to improper bank activities. Plaintiffs insist that, if Ms. Ore would have been permitted to sell the property, the bank would have been made whole and Plaintiffs would have reaped a profit of $53,000. Although Ms. Ore also would have earned a commission, Plaintiffs state her Proof of Claim was submitted to prove Plaintiffs' loss. However, this theory of recovery

---

[8]The FDIC-Receiver attached these documents

was not set forth in either the administrative record or, for that matter, in the Complaint. Therefore, the claim must be dismissed.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court finds neither the Sugarcreek, Inc. Claim nor the Real Estate Claim can survive and, therefore, the Court **GRANTS** the FDIC-Receiver's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: January 26, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE